I now call Case 19-2192 TecSec v. Adobe. Mr. Oaks, whenever you're ready. Good morning and may it please the Court. This Court's precedent is clear that whether an accused infringer had the requisite knowledge to support a claim of induced infringement is a factual issue focused solely on the subjective beliefs of the defendant. The District Court committed plain legal error in focusing instead on objective factors in determining as a matter of law that Adobe could not have believed that it infringed as a result of an erroneous and later reversed claim construction decision. The District Court's reasoning was flatly rejected by this Court in Smith and Nephew v. Arthrex, which held that even a court ruling of no infringement could at most create a factual question, not an entitlement to a non-knowledge finding as a matter of law. Well, let me just ask you, assuming we were hypothetically to agree to everything you've just said, where is the factual dispute? Did you establish? I know the District Court in its earlier summary judgment decision said there are factual disputes with regard to inducement, but that seemed to be on other matters. So in the record before the District Court, was there indeed a factual dispute with regard to intent during this time period, what we're talking about in terms of the motion in limine? Well, we were actually precluded from putting in that evidence based on the District Court's ruling, but there was evidence in the record. It was cited in the summary judgment briefing. And some of the evidence came in at trial because of the earlier period, but there was evidence that Adobe had knowledge of the patents, that it stipulated to infringement, so it was aware that its actions and the blog post that it posted would lead to infringement. It never changed its activities during the entire course of the litigation. There was evidence at trial that none of the senior executives were put on notice of the patents, although Adobe had notice of the patents. So there was certainly sufficient evidence on which a jury could have concluded, if we were to have been permitted to put on the entirety of the evidence, that there was induced infringement during that entire period. Even as the District Court pointed out, even if during the period in which the claim construction had gone in their favor, at least temporarily? There was nothing that Adobe put into the record that showed that that claim construction decision had any impact on Adobe, on its belief as to non-infringement, or its actions with respect to continuing that infringement during the entire period. So there was nothing on Adobe's side to rebut any of TechSec's showing that there was knowledge and intent during that period. Can I just ask you this question? If, again, assuming that we were to agree with you that the ruling on the motion in limine was incorrect, then that would make it, would it not, unnecessary for us to address the exclusion of the portions of Mr. Johnson's testimony because the ground for the exclusion was this time limitation? That's correct. The court made it completely clear in its ruling that the exclusion of Mr. Johnson's testimony was the result of the limine ruling and the fact that it was outside of the 2010-2011 time period. In that case, part of the testimony and the evidence that was excluded was in fact only one month after the time period. And so we believe that it should come in whether or not the limine ruling is wrong because it's circumstantial evidence of infringement during the earlier period as well. But you are correct that if the limine ruling is reversed, and it should be, that Mr. Johnson's evidence should come in just based solely on the changing of that decision. Can I ask another kind of procedural question? On the assumption, again, that this would go back to the reasons just discussed, would a summary judgment motion on inability for a reasonable jury to find the requisite knowledge or willful blindness be an available procedural option in the Eastern District? Generally, under the court's rules, it should not be because there is typically only an opportunity for a single summary judgment motion. Here, ADOBE already moved for summary judgment of no induced infringement, and the court denied that finding that factual issues precluded a finding of no induced infringement. So I think ADOBE already had that opportunity. It presented its case. Texec successfully opposed that, and that issue should have been an issue that was presented to the jury but was not because of this later limine ruling, which is really, as we highlighted in our brief, an improper summary judgment determination on induced infringement rather than a true limine ruling. On your reference to the rules, I have the same question that Judge Toronto raised. Would the District Court have discretion to entertain a summary judgment motion on this matter if we were to disagree with the motion in limine ruling? The District Court does have discretion to allow additional summary judgment motions, yes. Okay, and then it would be a matter of whether or not there's a factual dispute, correct? Correct, which the court did already find that there was a factual dispute, but, you know, if it was presented in a different way, yes. Yeah, not on this point. Correct. Okay, thank you. Counsel, this is Judge Reina. At some point, I'd like for you to also address what your view of our standard of review is on this particular issue we're discussing. Absolutely. As we set forth in our brief, we believe that the issue should be reviewed de novo. The court characterized it as a decision as a matter of law. It is a matter unique to patent law. It is clearly a legal decision that disposed of TexEx-induced infringement claims, so it is a legal conclusion, not an evidentiary conclusion. We cited the Vanda Pharmaceutical v. Westford case and Cunningham v. General Dynamics in the Fourth Circuit, so we do believe it is a de novo review of a pure legal issue. Even if it were an abuse of discretion standard, making a clear error of law is an abuse of discretion, and here there is direct Federal Circuit case law on point, and this would be a clear error of law that would also amount to an abuse of discretion. Okay, can I just... But the district court... Go ahead, Judge Trump. No, no, go ahead, please. Okay. But the district court said a little more than as a matter of law, and I don't know whether you want to characterize it 403, and I don't know if you would accept the fact that this was an alternative basis for his conclusion, but he did talk about prejudice and confusion to the jury and matters that typically are reviewed for abuse of discretion, correct? He did say that. It doesn't logically flow from the decision that he was somehow protecting TexEx from prejudice by disposing of TexEx-induced infringement claim altogether. I think it's clear from both the language and the impact of the decision that this was a decision as a matter of law and not a 403, and it's hard to fathom how the judge could protect TexEx by disposing of its claims in the negative. Well, I guess I was just going to ask about the very same thing. Generously read, there are two grounds of the decision. One is the legal impossibility ground, and that is a pure question of law, but the other is a moreover paragraph at the end, and I guess I have understood your position to be that while that kind of thing in general is subject to abuse of discretion review, there are at least two errors, legal errors in there. One is it's not up to the court, it's up to TexEx to decide what prejudice to live with, and the second is that you can't possibly decide that the issue cannot be fairly tried either with or without this evidence without considering all the other evidence that would bear on the issue, and that was quite properly not considered in the context of this motion in limine because it wasn't a summary judgment motion. That's correct. I think that's a fair characterization of that. The court simply stated, Adobe asked for the opportunity to present that evidence if TexEx opened the door not to dispose of TexEx's indirect infringement case altogether through a limine motion. Just to be clear, when you say TexEx asked for that, you're referring to essentially the final page in the post-oral argument supplemental filing you made because it didn't seem to me terribly clear in your original opposition to the motion in limine just as it was, to put it mildly, not clear what exactly Adobe was arguing in its opening motion in limine. I think that's right. I think it came from a lack of clarity as to what they were actually seeking. I don't know if it's procedurally appropriate. Can you say something about the 101 issue or does that appropriately wait until Adobe makes its 101 pitch? I'm happy to address that, but I was waiting for Adobe to address their issue on the cross-appeal and do that in the rebuttal time. I only got about 30 seconds left in my primary time. I did want to quickly address the damages issue, which is, this case is already noted that they have no case where they have found that a record-supported infringement award of zero royalty. This is certainly not the first case where such a finding would be appropriate. The jury appropriately weighed the damages from Adobe's adjudged and stipulated infringement and awarded an amount squarely between the two numbers proposed by the experts. That was supported by substantial evidence, which we've cited in our opening brief on pages 56 through 59. I know I've gone into my rebuttal time, so I will stop there. Okay, why don't we hear from the other side, and we'll reserve it for time. Mr. Bell. Good morning, Chief Judge Prost, and may it please the Court. Gabriel Bell for Adobe. This case is really about some decisions that TechSec made below in deciding how to litigate this case, and a prime example of that goes to the panel's questions earlier about the eliminate ruling. I'd like to clarify some of that context. When TechSec opposed Adobe's motion in limine, TechSec argued forcefully and persuasively that the District Court must exclude the key exculpatory evidence to avoid confusing the jury, and that can be seen at A10849-53. That was the entire basis of their opposition, and Judge Grady ultimately agreed with that at A28 and 29, that it would indeed be confusing to the jury. So TechSec having argued for that, and doesn't contend that that exclusion per se is an abuse of discretion now, with that evidence out at TechSec's insistence, it directly follows that there's no doubt that Adobe could not fairly defend itself against a charge of induced infringement in that period for which TechSec itself had stipulated non-infringement based on a claim construction. So far from abusing its discretion, and for this point, this independent basis, it is an abuse of discretion review to Judge Reyna's question, the District Court really had no choice based on how TechSec chose to litigate, but to then remove inducement for that period. So TechSec says now that it should have been given the choice whether to present this inducement theory, but respectfully it did have that choice, and refused to make it. When Adobe presented its motion in limine, it said either all in, that is, all of the exculpatory evidence, as well as the inducement theory comes in, or in fairness, it all has to be out. I'm sorry, Mr. Bell, this is Judge Toronto. Where in TechSec's opposition to the motion in limine did it say, we think it's highly prejudicial, but if you disagree, then we will give up the opportunity to put in our evidence of inducement if that evidence is going to come in. I didn't see it ever saying that, and then in the post-oral argument filing, it made pretty darn clear the exact opposite of that. Well, so respectfully, as to the latter point, I think you were correct in your observation earlier that it was unclear what they were saying. It was one throwaway line at the end of their supplemental brief that they finally acceded to, okay, I guess it can all come in. But in its opposition, it insisted on having it both ways. So, yes, it didn't say we willingly give up our case, but what it did say was this evidence, this exculpatory evidence, must be excluded. It did that on every page of its opposition, and it did so based on the proposition that it would unduly confuse the jury. And, you know, this court has held in cases that that's a legitimate basis for keeping out such evidence. So we can't really fault the district court for agreeing with TXEC on that point when, in its initial opposition, certainly, and through the vast majority of the three times that the district court considered it, TXEC would not accede to it all coming in. They deliberately stuck with a strategy of wanting it both ways. And I think that's why... Yeah, but the question is... I'm sorry for interrupting. But the question is, at the end of the day, if the judge says we are going to let Adobe put its evidence on, whose decision is it to say, well, I'm not going to proceed with this or I'm going to proceed with this in the affirmative? Is it the district court's judge decision or is it TXEC's? Well, I think TXEC had that choice. So in response to Adobe's motion to eliminate, it could have said, okay, you're right, let's let it all come in. But it didn't. It called that actually a false choice and refused to make that decision. And so then through multiple rounds of briefing, it pretty much stuck to its guns with the exception of that. Mr. Bell, part of what I guess is troubling me is the heading of your motion in limine never suggested that without this evidence... I'm sorry, never suggested either the legal impossibility ground. It said they should not have an inducement case unless this evidence comes in. And that's what TXEC was responding to. It was making the argument that, no, we should get our inducement case but not have that evidence come in. I don't see where your paper gave, as you say, forced them to say what they would do with the inducement case for this post-March 2011 time period if the three documents were going to come in. I think the way Adobe presented it was an either-or. Throughout the paper, it said, we don't think this evidence should come in of inducement. Or rather, it said, we think we need to have this evidence, this exculpatory evidence. Basically, Adobe was trying to head off a situation where it was going to face an inducement charge but then not be able to bring in the most exculpatory evidence. So it teed it up in that way and said, look, either we need to be able to present this evidence refuting inducement or inducement shouldn't come in at all. Right. And the response by TXEC was, no, we think we should get to put on the inducement case but that this evidence should not come in because it would be dreadfully unfair. But that doesn't answer the question. If you think, if you, the judge, think that the evidence has to come in if inducement were to go forward, then we don't think inducement can go forward. That was not one of the choices that Adobe's motion required it to address. Well, respectfully, I think in the way that TXEC opposed the motion, we can see that it was clear that that was the choice. And so TXEC said, in its opposition almost exclusively, you must keep this evidence out. And to be sure, they wanted to at the same time have the unfair advantage then of presenting their inducement theory while keeping out that other evidence. And so I think it would be untoward to fault the district court for saying, okay, we hear you, TXEC, on keeping out this exculpatory evidence, but then you're going to have to live with the consequences of that. And TXEC did not want any part of that. I'm sorry, but TXEC after the oral argument said, we very much want a part of that. It did, but again, in a throwaway line. In a throwaway line at the end of a supplemental brief after the district court had already addressed it and given them the opportunity to address it again. And then at the hearing after that additional supplemental briefing on the motion to reconsider, the district court didn't hear any such thing about keeping in both or letting the exculpatory evidence come in while at the same time allowing them to present their case. So for that reason, we think it's not an abuse of discretion, but we also think as a matter of law, it was a legitimate decision to say in this time period, it's TXEC's burden to come forward and present an inducement theory and that where TXEC has itself conceded to non-infringement based on a claim construction, that that's just not viable as a matter of law. And we think that was correct as well. Well, why don't we move on to the 101? I know Judge Toronto obviously had some questions. So you want to move on to your 101, which is an alternative basis for affirmance? Certainly. On section 101, we think this court's case law, particularly the recent cases of Erickson and Dropbox, provide a significant amount of clarity that these claims just like those are ineligible under section 101. In those cases, the court addressed claims, technical claims, that purported to improve access control security. And they included jargony type components very similar to the ones here. If I can just focus on it, it seems, just tell me, I guess when I read Erickson and to some extent Dropbox too, although Dropbox is maybe even more extreme case, but in any event is non-precedential. Both of those involve, I'm not sure I'd use the word jargony, but in any event, wholly general functional terms. Why was the district court in denying summary judgment here wrong in saying this crosses the line into enough technical specificity by the combination of at least three things. Namely, the nesting, the encryption, and the labeling all taken together as to which this is not either purely general functional stuff, but in fact, a combination of techniques that in the combination is arguably innovative and in fact, for the improvement of computer-based secure communications. Sure. Well, there's a couple of reasons, Jeff Stronto. The first is that TechSec, the only purported innovation in these claims, is multi-level security. So if we take, for example, claim one, and this is our case. Where do you get the idea that that's the only purported innovation? I thought that the preamble, which is limiting in this case, says the multi-level thing, but then the body of the claim says encryption and labeling, and I thought that in both the declaration, is it Jones, that was attached to the response to the summary judgment motion, and throughout the briefing, it is always the combination of those things that is being advanced as the purported innovation, not just multi-level. Well, if you look at the expert testimony from Mr. Wagner, for example, he acknowledged that as their expert that the key feature is the ability to perform multi-level encryption. TechSec's founder, Mr. Scheidt, also, and that's at A12675, acknowledged that that's the key feature, and that's reflected also in the specification. Can I just ask, just, I mean, the two things that you just cited, were they part of the summary judgment motion? The 101 summary judgment motion? I don't believe, I don't know, I don't know the answers to that, Your Honor. I don't know whether they were cited, per se, but the more important point here is the intrinsic record, and that's the specification at column 2, 6, line 6, and line 65 to 66, and 4, 25 to 34, where it makes clear that the problem is one-level security, according to the patent. In the past, there was one-level security done, and the patent acknowledges that that was done with all of those combined things that you mentioned. I'm sorry, I'm not looking at it right now, so my recollection may be incorrect, but I thought part of what column 2 says is multi-level encryption is actually part of what's old. The problem with multi-level encryption all by itself is that you need to give different recipients different keys, and what a headache that is. And so,  that's better is use the combination of encryption and labeling, and that gives the document distributor a way to get to essentially broadcast the document in which different readers will have access to different parts of the document without having to send out you know, 1,500 or something different keys for encryption. Does the column 2 say that? I'm sorry, I hear that I'm in my rebuttal time, but the answer... No, no, no, please respond. To answer your question, the patent acknowledges that things like labeling, which could be as simple as TechSec acknowledges swapping a top secret label on it or putting a password on it, that's all known. They don't contend otherwise. There's nothing innovative about putting a label on. So we are then back to the point of doing it nested one within another, and that is seen in figure 3 where it's this nested series of locations secured by keys and that we submit and it runs us directly into the analogy that this court found in Erickson. There the claims were akin to locking different floors off to secure access for different employees to access different areas. That's exactly what we have here with one slight twist. Here we say also lock the front door of the building. That's all that's different. Do an ID check to get in and then an additional ID check based on whether you're going to your office. As we all know, we have keys to the outer door, we have keys to the inner door. I don't see any way to meaningfully distinguish that analogy and the underlying human activity from the central point of these claims here as TxVAC has limited them. Okay. Why don't we go back to Mr. Oates and we'll reserve your rebuttal time, Mr. Bell. Thank you,  Mr. Oates? Mr. Oates? Thank you, Your Honor. The district court properly denied Adobe's 101 motion concluding that Adobe's argument failed at step one because the asserted claims were not directed to an ineligible concept. Specifically, the district court found that the patents create a solution to a computer centric problem which is not addressed by the prior art and offer a solution to a problem which was multiple users in multiple locations accessing information at different security levels from a central repository which would not exist but for the ubiquity of computer technology. How did computer technology... Sorry. No, your friend talked about Ericsson, so how would you differentiate this from Ericsson? Sure, these claims here are very different from Ericsson which was, as I think Judge Toronto pointed out, very high-level generic steps, first of all, related only to access control but again just pure functional language whereas here this is a specific technique and specific solution to a computer problem that involves combining things in a new way, access control, encryption, and nesting or embedding encrypted objects within other encrypted objects. That was unconventional and had not been done before and so unlike Ericsson which is really just that was unconventional and in fact in Adobe's own characterization and prior briefing it called the DCOM claims a particularized multi-level and multi-step technique for restricting access on an object by object basis using both encryption methods and labels. So Adobe is... Can I ask you why respond to Mr. Bell's building floor room access in an office building that why is this not just transferring into a computer access context what is highly familiar in a non-computer access context? Sure. That is an extreme overgeneralization the dangers of which were outlined in EnFish and DDR but that focuses only on access control and it only focuses on a single level of security and it doesn't arise in the computer context. What the problem that the TechSec patents were addressing I'm sorry I thought his example is designed to have actually quite literally multiple levels of security but only a single type of security there you're talking about only access control there's no encryption and one of the key features of the DECOM patents is that you're combining encryption with the labeling for access control on those embedded encrypted objects so the multi-level is two types of security and then combined in a tiered structure and so this is really a new technique that had not been done before what TechSec had described in the background is the problems with single level security so this is at the patents at one column one line 15 all the way through 261 but the problem with a single level of security or a single type of security is the problem with distributing just a single type of access control here TechSec is combining access control keys labels and encryption with the nesting to create a new type of security that would protect computer data in these distributed systems so it's really different than just having it would be way too general just to say that this is just locking a door I think one of the analogies Adobe used was locking the glove box inside the car that has nothing to do with encryption that's a single type of key access control without changing the underlying data through an encryption process and without using labels of any kind so that you can track and control any of those embedded nested encrypted objects so I think very different than an over generalized locking a car door or locking a floor in a building Could you go back just I don't know how much time you have left but I assume it's very short but could you go back to the point on the motion on Lemonade that Mr. Bell was emphasizing in terms of TechSec um position and uh and what the district court did Yes I think Judge Toronto hit it correctly and that is that TechSec was never presented with the position of give up your indirect infringement claims if you don't want this evidence to come in what Adobe captioned its motion as was you either don't present the evidence or this evidence all comes in and we said we want to present our indirect infringement case we don't think that evidence should come in but we absolutely want to present our indirect infringement case when it was filed a supplemental brief and said we absolutely want our indirect infringement case and if the evidence comes in it comes in and we'll deal with it that's that's the decision that TechSec would make but we are absolutely not giving up our indirect infringement case in the face of a limiting motion okay thank you can i just ask a housekeeping matter i would appreciate receiving two things one is pages 244 51 to 52 of the 234151 and 5151 to 52 okay which you do quote i think but mysteriously is not in the joint appendix and then 23450 to 52 is completely illegible i know that there was one order asking for clear more thank you thank you thank you your honor i just want to follow up on the questioning and the point about what multilevel security involves techsec now wants to make it about a complex series of steps but here's what this court held in techsec 2 based on techsec's position this court said techsec's position is that acrobat performs multilevel security whenever a user encrypts a pdf and then attaches it to a separate pdf and then encrypts that pdf it's as simple as putting one encrypted thing inside another that's what this court said at 658 f appendix 584 and this court agreed so techsec can't now say it's something much more complex and when you look at the claims themselves i urge the court to put the claims here side by side with those in ericsson and dropbox and you'll see here nothing but generalized hard to imagine more highly generalized steps for doing encryption and decryption and labeling things and then giving access based on the label we granted access based on identification or other things in ericsson and in dropbox and that wasn't enough and techsec doesn't claim again that putting a label on something or having a password is somehow anything innovative in fact label here was defined as anything that determines what who or where is authorized to receive the object again in techsec 2658 that's appendix at 580 and again that brings us back to the analogy we discussed before you could have an id check at the front building as is done in the court to get access into the other floors and then have to further show id or use a key to get in specific areas within it and so it's not overgeneralizing the claims here any more than in ericsson where it was a computer based system that was designed purportedly to improve access control same in dropbox counsel this is judge arena and going back to your analogy it seems to me here that this technology is that you don't have to have access to the building you can just skip straight to the office exactly is that what's your response to that so what techsec claims is the invention here is an encrypted outer object that once you get through that encryption another encrypted object on the inside so you need to have the keys to both in effect and you can see that your honor at figure 3 of the patent where it's this nested series of areas that actually show that using a traditional metal key and the patent itself analogizes objects to things like your car so while techsec denigrates any sort of analogy to real world I think the spec itself in figure 3 and its discussion of what an object is as well as this court's discussion of analogies in Erickson puts this squarely within the realm of what this court held had long been held ineligible or at least repeatedly and that is controlling access to resources using software this court said is an abstract idea and we think the same reasoning applies here and the claim should be held ineligible just as in Erickson okay thank you we thank both sides and the case is submitted thank you your honor